UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ALICE W.,[1]

        Plaintiff,

        v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:21-cv-01768-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Alice W. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.[2] This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, that decision is AFFIRMED.

## STANDARD OF REVIEW

    The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. §

---

[1] In the interest of privacy, the court uses only plaintiff's first name and last initial.

[2] Plaintiff also filed an application for Disability Insurance Benefits ("DIB"), but she withdrew this claim at the hearing and appeals only the denial of her SSI application. *See* Tr. 16.

1 – OPINION AND ORDER

405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since June 21, 2019, the alleged onset date. Tr. 19. At step two, the ALJ determined plaintiff suffered from the following severe impairments: rheumatoid arthritis, fibromyalgia, obesity, depressive disorder, schizoaffective disorder, anxiety disorder, obsessive compulsive disorder, autism spectrum, attention deficit disorder, opioid dependence, borderline personality disorder, and cannabis use disorder. Tr. 19.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she has the "capacity to perform light work as defined in 20 CFR 416.967(b), except the claimant can occasionally climb ramps or stairs, but she can never climb ladders, ropes, of scaffolds. She can occasionally stoop, kneel, or crouch. She can never crawl. She can understand, remember, carry out and persist at simple, routine, repetitive tasks (i.e. apply commonsense understanding to carry out detailed but uninvolved instructions consistent with unskilled work with a reasoning level of two or less). She can make simple work-related decisions. She requires a work setting involving few, if any, changes in the workplace. She cannot perform assembly line pace work. She can tolerate occasional structured contact with co-workers, but she must avoid interaction with the public." Tr. 21.

At step four, the ALJ found plaintiff was unable to perform any past relevant work. Tr. 23. However, considering plaintiff's age, education, work experience, and RFC, at step five the ALJ concluded there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including cleaner-housekeeper. Thus, the ALJ concluded plaintiff was not disabled.

## DISCUSSION

**I.      Subjective Symptom Testimony**

Plaintiff contends the ALJ erred in discounting her subjective symptom testimony concerning her mental and physical ailments. When a claimant has medically documented impairments that could reasonably be expected to cause the alleged symptoms, and there is no

evidence of malingering,[3] "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and

---

[3] The ALJ did not find that plaintiff was malingering.

4 – OPINION AND ORDER

other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. § 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. An ALJ may not "demand[] positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony," but "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).

As plaintiff notes in her brief, she testified about several symptoms that allegedly limit her ability to work. At the hearing, plaintiff described a history of schizophrenia that had impacted her ability to hold a job. Tr. 38-40. She also discussed issues with her memory, describing that she had to journal to remember what helped her symptoms. Tr. 44. She experienced paranoia, hallucinations, and fear despite medication. Tr. 46, 56-57. She also testified to severe knee, hip, and back pain. Tr. 41. Plaintiff related that she could stand for eight to ten minutes at a time, and was able to sit for fifteen minutes before experiencing pain. Tr. 44-45. The testimony therefore alleged symptoms from both mental and physical impairments that limited plaintiff's ability to work.

The ALJ observed that plaintiff's testimony at the hearing "renewed" the allegations she had made in her written application materials. The ALJ then adequately addressed each of these areas in the decision, finding the testimony conflicted with plaintiff's improvement with treatment and other medical evidence in the record. "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the

5 – OPINION AND ORDER

testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

The ALJ reasonably concluded plaintiff's testimony was inconsistent with her improvement with treatment[4] and other objective medical evidence. Both are proper bases to reject a plaintiff's symptom testimony. *See Smartt*, 53 F.4th at 500. Addressing plaintiff's allegations of schizophrenia, Tr. 38-40, the ALJ reasonably concluded the testimony was at odds with the improvement apparent from plaintiff's contemporaneous treatment notes. Tr. 23 (citing Tr. 992). As for plaintiff's testimony concerning memory issues, Tr. 44, the ALJ found this conflicted with plaintiff's recent treatment history as well. Tr. 20 (citing Tr. 994, where plaintiff's most recent treatment notes shows her memory "grossly intact"). The same was true for plaintiff's testimony of paranoia and hallucinations. Tr. 20 (citing Tr. 417, 992, noting marked decrease in hallucinations and paranoia symptoms with medication). And finally, the ALJ considered plaintiff's testimony concerning her knee, hip, and back pain, and found this testimony conflicted with the medical record as well. Tr. 22 (citing Tr. 615, 780-81, noting normal back flexibility and full range of motion in all joints). This medical evidence and history of improvement with treatment is substantial evidence and constitute clear and convincing reasons to support the ALJ's conclusion that plaintiff's symptoms are not as "intens[e],

---

[4] Defendant argues that plaintiff waived any challenge to the ALJ's decision to discount symptom testimony based on plaintiff's "improvement with treatment," 20 C.F.R. § 416.929(c)(3)(iv). Def. Br. 4 (citing *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)). Because the court finds the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's symptom testimony, it need not decide the question of waiver.

6 – OPINION AND ORDER

persisten[t], and limiting" as suggested by plaintiff's testimony and application materials.  The ALJ therefore did not err by discounting plaintiff's symptom testimony.

Plaintiff counters that the ALJ erred by relying on only a "cursory and selective summary" of the medical evidence, and that she "cherry-picked the record to suggest that [plaintiff] presented as essentially 'normal' in a clinical setting." Pl. Br. 7, 9.  The Ninth Circuit has explained, however, that "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277.  Here, the ALJ clearly identified the testimony she found less than credible and provided sufficient information for the court to meaningfully determine whether the ALJ's conclusions are supported by substantial evidence.  Tr. 20-23.  To be sure, as plaintiff points out, there is evidence on the other side of the ledger.  *See* Pl. Br. 9-10.  But these arguments go to the weight of the evidence, and the court may not "reweigh the evidence [and] substitute [its] own judgment" for the ALJ's.  *Winans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987) (internal quotation and citation omitted).  Instead, the question is whether, "considering the record as a whole, a reasonable person might accept [the evidence] as adequate to support" the ALJ's conclusion that plaintiff's history of conservative treatment undermines his credibility (i.e., whether it is supported by substantial evidence).  *Thomas*, 278 F.3d at 954.  As described above, the ALJ adequately supported her conclusion to discount plaintiff's subjective symptom testimony with substantial evidence in the record.

Plaintiff further argues that the ALJ erred because she cannot, as a matter of law, reject plaintiff's symptom testimony solely on the ground that it was unsupported by the objective medical evidence.  Pl. Br. 6-8.  But plaintiff misreads the ALJ's decision.  As the Ninth Circuit has held, "[w]hen objective medical evidence in the record is inconsistent with the claimant's

7 – OPINION AND ORDER

subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). Here, as in *Smartt*, the ALJ discounted plaintiff's testimony because it *conflicted* with objective medical evidence, not because there was no corroborating medical evidence at all. It is error for an ALJ to require positive objective medical evidence "fully corroborat[ing]" every allegation within the subjective testimony, *Burch*, 400 F.3d at 681, but not error to find that inconsistencies undermine the symptom testimony. The Ninth Circuit has regularly upheld ALJ decisions that rely on inconsistencies to discount symptom testimony. *See, e.g., Chaudhry v. Astrue*, 688 F.3d 661, 672–73 (9th Cir. 2012) (affirming an ALJ's determination that interpreted and preferred objective medical evidence to subjective testimony). Because conflict with objective medical evidence—and on top of that, improvement with treatment—is a sufficient, clear, and convincing reason to discount plaintiff's symptom testimony, it was reasonable for the ALJ to do so here.

## II.     Medical Opinions

Finally, plaintiff contends the ALJ erred by finding the opinion of Erik Morris, PMHNP, unpersuasive. Pl. Br. 2-13.

When evaluating medical opinion evidence for Title XVI claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 416.920c. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. § 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant,

8 – OPINION AND ORDER

(4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(a), (c)(1)-(5).

"Supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. § 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. § 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839 at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

9 – OPINION AND ORDER

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

The ALJ found NP Morris's opinions unpersuasive because they were inconsistent with NP Morris's other treatment notes, inconsistent with the plaintiff's improvement with treatment, and unsupported by the record. Tr. 23. Specifically, the ALJ observed that there was "no medical evidence that would reasonably support the conclusion that the claimant would experience excessive workplace absenteeism." *Id.* The ALJ also noted that plaintiff's medication "pretty much took care of the voices" she was hearing, and that plaintiff had been doing "really well" and could handle stress more appropriately. *Id.*

The ALJ adequately assessed both the supportability and consistency of NP Morris's opinion when she found it unpersuasive. Beginning with supportability, the ALJ explained that she discounted NP Morris's opinion that plaintiff "would likely miss work more than four days per month" because it failed to reflect plaintiff's improvement with treatment and NP Morris's own treatment notes. The ALJ specifically cited plaintiff's January 2021 appointment, which showed marked improvement in plaintiff's hallucinations, stress levels, and ability to exercise. Tr. 991-999. This appointment was less than a month before NP Morris opined that plaintiff continued to experience delusions and hallucinations. *Compare* Tr. 1453 *with* Tr. 991–92. Other objective medical evidence of improvement in the record further supports the ALJ's decision. For example, in March through May 2020, NP Morris opined that plaintiff did not demonstrate delusional ideation or hallucinations and that even if they existed in an "attenuated form," they

"do not seem to significantly adversely impact her life as the disturbance did previous to treatment." Tr. 1046, 1073, 1102, 1119. Likewise, at plaintiff's August 12, 2020 therapy appointment, she reported feeling "more stable," "more grounded," and "calmer." Tr. 1026. Ultimately, the ALJ's citations to the medical record and other objective medical evidence provide substantial evidence for the decision that NP Morris's opinion lacked support in the record.

The ALJ also reasonably determined NP Morris's opinion was less persuasive because it was inconsistent with other persuasive medical opinions and evidence in the record. Under the new regulations, an ALJ may consider whether a provider's opinion was "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 791–92 (citing 20 C.F.R § 404.1520c(c)(2)). The ALJ found the opinions of Drs. Berry and Fountain that plaintiff could reasonably sustain "simple" light work involving certain postural and social limitations persuasive based on plaintiff's improvement with treatment and the entirety of the medical evidence. Tr. 23 (citing Tr. 149-63, 184-201). Plaintiff does not challenge this finding. *See generally* Pl. Br., ECF No. 15. And, for the reasons stated above, the ALJ had substantial evidence to find Drs. Berry and Fountain's opinions were supported by the record, while NP Morris's was not. Substantial evidence that NP Morris's opinion was inconsistent with the opinions of other medical sources therefore further supports the ALJ's decision to find NP Morris's opinion unpersuasive.

Plaintiff's arguments to the contrary are not compelling. Plaintiff contends both that the ALJ failed to integrate evidence from the "*overall* medical record," Pl. Br. 14 (emphasis in original), and that it was error to reject NP Morris's opinion as based on self-reports because that rationale does not apply to opinions regarding mental illness. *Id.* (citing *Buck v. Berryhill*, 869

11 – OPINION AND ORDER

F.3d 1040, 1049 (9th Cir. 2017)).  First, with respect to the argument that the ALJ neglected to include evidence from the full spectrum of the medical record, that is not the standard of review.  The ALJ, not this court, "is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities."  *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020).  As noted above, plaintiff's arguments about the "overall medical record" go to the weight of the evidence, and the court may not "reweigh the evidence [and] substitute [its] own judgment" for the ALJ's.  *Winans*, 853 F.2d at 644.  Here, the ALJ's citation to the most recent treatment visit and inconsistencies within the medical records were more than sufficient to serve as substantial evidence to support her decision.  Plaintiff's string cite to other medical records showing symptoms like anxiety, delusions, and depression do not change this analysis.  *See* Pl. Br. 14, citing, *inter alia*, Tr. 620, 1356.  Not only do these citations precede the medical evidence of improvement the ALJ cited, they are an effort to convince this court about the weight of competing medical records.

Finally, even if the ALJ erred in part by rejecting NP Morris's opinion because it was based on plaintiff's self-reports, such error was harmless.  An error is harmless where "remaining reasoning and ultimate credibility determination [a]re adequately supported by substantial evidence in the record."  *Carmickle Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); s*ee also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).  Because the ALJ's decision finding NP Morris's opinion unpersuasive for its internal inconsistency and lack of support in the medical records is supported by substantial evidence, further alleged error (if any), is harmless.  *Id.*

In sum, the ALJ's decision to find NP Morris's opinion unpersuasive was supported by substantial evidence, with reference to the supportability and consistency factors.  The ALJ's

finding that NP Morris's own treatment notes, the larger record, and plaintiff's improvement with treatment undermined his medical opinion were all reasonable bases to find the opinion unpersuasive.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is AFFIRMED.

DATED June 29, 2023.

/s/ Youlee Yim You<br>
Youlee Yim You<br>
United States Magistrate Judge